IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | | |
|---|---|---|
| **TROY GREENWAY** | ) | |
| | ) | |
| **Plaintiff,** | ) | Civil Action No.: 6:12-cv-00005 |
| | ) | |
| v. | ) | |
| | ) | |
| **MICHAEL ASTRUE,** | ) | By: Hon. Robert S. Ballou |
| **Commissioner of Social Security,** | ) | United States Magistrate Judge |
| | ) | |
| **Defendant.** | ) | |

## REPORT AND RECOMMENDATION

Plaintiff Troy Dwayne Greenway ("Greenway") filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") determining that he was not disabled and therefore not eligible for supplemental security income ("SSI") under the Social Security Act ("Act") 42 U.S.C. §§ 1381-1383f. Specifically, Greenway alleges that the Commissioner (1) improperly evaluated his pain complaints and credibility and (2) failed to properly consider the functional effects of his obesity. Greenway also argues that he has presented new evidence which warrants remand.

This court has jurisdiction pursuant to 42 U.S.C. § 405(g). This case is before me by referral pursuant to 28 U.S.C. § 636(b)(1)(B). The case is ripe for decision. I have carefully reviewed the administrative record, the legal memoranda, the argument of counsel, and the applicable law. I conclude that substantial evidence supports the Commissioner's decision, that he properly assessed Greenway's pain complaints and creditability, and that he properly considered the functional effect of Greenway's obesity. I likewise conclude the additional evidence submitted by Greenway does not warrant remand. Accordingly, I **RECOMMEND**

1

**DENYING** Greenway's Motion for Summary Judgment (Dkt. No. 17), and **GRANTING** the Commissioner's Motion for Summary Judgment (Dkt. No. 19).

**I.**

Section 405(g) of Title 42 of the United States Code authorizes judicial review of the Commissioner's denial of social security benefits. Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). This court limits its review to a determination of whether substantial evidence exists to support the Commissioner's conclusion that the claimant failed to demonstrate that he was disabled under the Act. "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations omitted). The final decision of the Commissioner will be affirmed where substantial evidence supports the decision. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

The plaintiff bears the burden of proving that he suffers under a "disability" as that term is interpreted under the Act. English v. Shalala, 10 F.3d 1080, 1082 (4th Cir. 1993) (citing 42 U.S.C. § 423(d)(5)). The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects his ability to perform daily activities or certain forms of work. Rather, a claimant must show that his impairments prevent engaging in any and all forms of substantial gainful employment given the claimant's age, education, and work experience. See 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner uses a five-step process to evaluate a disability claim. Walls v. Barnhart, 296 F.3d 287, 290 (4th Cir. 2002). The Commissioner asks, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment;[1] (4) can return to his past relevant work; and if not, (5) whether he can perform other work. Heckler v. Campbell, 461 U.S. 458, 460-462 (1983); Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R. § 404.1520). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. § 404.1520(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. The burden shifts to the Commissioner at the fifth step to establish that the claimant maintains the residual functional capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

In cases such as this, where the claimant has submitted additional evidence to the Appeals Council, and the Appeals Council considered that evidence, this court must review the record as a whole, including the new evidence, to determine whether substantial evidence supports the Commissioner's findings. Wilkins v. Secretary, Dep't of Health and Human Servs., 953 F.2d 93, 95-96 (4th Cir. 1991).

---

[1] A "listed impairment" is one considered by the Social Security Administration "to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." 20 C.F.R. § 404.1525(a).

## II.

**Social and Vocational History**

Greenway was born July 16, 1974. R. 38. He has a 9th grade education, having never earned his GED. R. 38. Greenway stopped working in 2006, having worked as a masonry helper, mixing mud and carrying mud, sand, bricks, and cinder blocks. He also very briefly worked setting up carnival rides and as a security guard. R. 39, 47, 63. The work as a general laborer or mason's laborer is heavy and unskilled work, the carnival job is medium to heavy and unskilled work, and the employment as a security guard is light and unskilled work. R. 64-65. Greenway described his daily activities in June 2009 as trying to help clean, which "doesn't work," trying to walk, which "doesn't work," and constantly gasping for air. R. 165. He also reported trying his best to take care of his wife, who has diabetes, and sometimes cooking, although he reported that afterwards it felt like he had "worked about 15-20 hours" that day. R. 166-67. Greenway reported in October 2008 that he spent the day trying to come up with ways to relieve his pain and "stick[ing] [his] head in the freezer to breath[e]." He reported that he was no longer able to take care of his wife and no longer able to stand long enough to cook, but that he attempted to do one load of laundry a day. R. 195-97.

**Claim History**

Greenway filed his claim for SSI on May 8, 2010. R. 132. He initially claimed a disability onset date of February 22, 2007. R. 132. The Commissioner denied Greenway's application initially and upon reconsideration. R. 75-79, 82-83. Administrative Law Judge ("ALJ") Geoffrey Carter held a hearing on June 17, 2010, at which Greenway, represented by counsel, and a vocational expert testified. R. 33-69. At the hearing, Greenway amended his alleged onset date to May 6, 2009. R. 46.

The ALJ denied Greenway's claim on July 23, 2010. R. 18-28. In his opinion, the ALJ found that Greenway suffered from the severe impairments of chronic obstructive pulmonary disease, emphysema, arthritis in his back and knees, obesity, and bipolar disorder. R. 20. The ALJ found Greenway's alcohol abuse was a non-severe impairment. R. 22. The ALJ found that none of these impairments, either individually or in combination, met or medically equaled a listed impairment. R. 22. The ALJ further found that Greenway has an RFC to perform simple, unskilled, sedentary work, that does not require more than frequent climbing of ramps and stairs, more than frequent balancing, more than occasional climbing of ladders/ropes/scaffolds, stooping, kneeling, crouching, and crawling, any concentrated exposure to hazards, and any moderate exposure to respiratory irritants. R. 24. The ALJ found Greenway unable to perform his past relevant work, but that jobs exist, in significant numbers in the national economy, which Greenway can perform given his age, education, work experience, and RFC. R. 26. As such, the ALJ concluded that Greenway is not disabled. R. 27.

Greenway filed an appeal with the Social Security Administration's Appeals Council and submitted additional evidence in his request for review. On November 23, 2011 the Appeals Council denied Greenway's request to review the ALJ's decision, thereby rendering the decision of the ALJ the final decision of the Commissioner. R. 1-5. On January 1, 2012, Greenway filed his complaint in this court seeking judicial review of the ALJ's decision (Dkt. No. 1).

## III.

Greenway makes two distinct and discrete arguments for remand. First, Greenway contends that the ALJ erred in evaluating the evidence of record as it relates to the credibility of his subjective complaints of pain and did not properly consider the functional effects of his

5

obesity. Second, Greenway argues that the new evidence he presented to the Appeals Council warrants remand.

Greenway asks the court to remand this case because the record does not support the ALJ's conclusions relating to Greenway's credibility as to his pain complaints and functional limitations caused by his obesity. At base, Greenway's arguments are an invitation to reweigh the evidence of record. Greenway does not point to any evidence the ALJ failed to consider, does not identify any legal standard the ALJ misapplied, and does not put forward any legal duty the ALJ failed to fulfill. The duty of this court is to review the record as whole to determine if substantial evidence exists—that is, whether there is sufficient evidence that a reasonable mind may find as adequate to support the ALJ's conclusion. I find that there is.

**Credibility and Subjective Pain Complaints**

Greenway argues that the ALJ improperly evaluated his pain complaints and credibility. An allegation by a claimant the he suffers from pain, standing alone, is insufficient to establish a disability under the Act. "While the pain caused by an impairment, independent from any physical limitations imposed by that impairment, may of course render an individual incapable of working, allegations of pain and other subjective symptoms, without more, are insufficient." Craig v. Chater, 76 F.3d 585, 592 (4th Cir. 1996) (citing Myers v. Califano, 611 F.2d 980, 983 (4th Cir.1980)). The Fourth Circuit has recognized a two-step process to determine whether a claimant is rendered disabled by pain. Hines v. Barnhart, 453 F.3d 559, 564-66 (4th Cir. 2006). First, the claimant must establish with objective medical evidence that he suffers from an impairment that could reasonably be expected to cause pain. Id.; see also Craig, 76 F.3d at 594. "It is only *after* a claimant has met [this] threshold obligation . . . that the intensity and persistence of the claimant's pain, and the extent to which it affects her ability to work, must be

evaluated." Craig, 76 F.3d at 595 (citing 20 C.F.R. §§ 416.929(c)(1) & 404.1529(c)(1)) (emphasis in original). During this second step, the claimant may rely entirely on subjective evidence, but objective evidence remains relevant. Hines, 453 F.3d at 565. In other words, the absence of objective medical evidence of the intensity, severity, degree, or functional effect of pain is not determinative. Id. A claimant's allegations about his pain "need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the pain the claimant alleges []he suffers." Craig, 76 F.3d at 595 (citing 20 C.F.R. § 416.929(c)(4)). Furthermore, the claimant cannot make a showing of disability merely by demonstrating that he experiences pain. Green v. Astrue, 3:10CV764, 2011 WL 5593148, at *4 (E.D. Va. Oct. 11, 2011) (citing Hays, 907 F.2d at 1457–58) ("An individual does not have to be pain-free in order to be found 'not disabled.'"), report and recommendation adopted, 3:10CV764, 2011 WL 5599421 (E.D. Va. Nov. 17, 2011). The pain must be so severe as to prevent the claimant from performing any substantial gainful activity.

The ALJ found that Greenways's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, but that his statements concerning the intensity, persistence, and limiting effects of these symptoms were not fully credible. R. 25. The ALJ gives a detailed analysis of the record in support of this conclusion. First, the ALJ states that Greenway's treatment record does not fully support his allegations regarding the severity of his limitations—specifically, his allegation that he suffers from debilitating back and leg pain. In support of this statement, the ALJ cites Greenways's x-rays, which revealed only mild arthritic changes from L3 to S1, and the fact he has been neurologically intact on examination. The ALJ further notes that Greenway had essentially normal joint range of motion in his lower

7

extremities—with the exception of some slightly reduced hip joint range of motion—normal grip strength, normal gate, normal lower extremity strength, and no sensory or motor loss in his lower extremities. R. 25.

Substantial evidence supports the ALJ's conclusion. An x-ray taken July 20, 2009 revealed that Greenway had mild facet arthritic changes in his lower lumbar spine from L3-S1. R. 253. Dr. William Humphries performed a consultative examination of Greenway on July 10, 2009. His examination revealed that Greenway had a slightly reduced range of motion in his back with tenderness to palpation of the paraspinus muscles in his lumbar region. A straight leg test was negative to 90 degrees sitting bilaterally, but with lumbar discomfort on the left. R. 248. Dr. Humphries did not find any other back issues. Greenway had a normal gait, a slightly reduced range of motion in both hips, and a normal range of motion in both knees. Greenway had a normal neurologic exam; normal strength in both lower extremities, and no muscle wasting, motor, or sensory loss in the extremities. R. 249.

Greenway established care with Andre Douglas, a Family Nurse Practitioner, on April 2, 2010. Nurse Douglas examined Greenway and found he had a distinct tender spot and muscle spasms to the right and left of the lumbar spine, but no evidence of scoliosis. A straight leg test was positive at 10 degrees bilaterally. R. 351. As the ALJ noted, Greenway's treatment was generally conservative. R. 25. Greenway saw Nurse Douglas seven more times between April, 2010 and March, 2011. R. 346-47, 348-49, 365-66, 367-68, 370-71, 373-73, 374-75. He was never given a referral for physical therapy or to an orthopedist or neurosurgeon. Instead, as the ALJ noted, he was treated with pain medications and muscle relaxants. R. 25. Nurse Douglas initially prescribed ibuprofen and Flexeril (a muscle relaxant) for Greenway's back pain. R. 352. Nurse Douglas started Greenway on Ultram on April 16, 2010. R. 349. From May 14, 2010,

onwards, Nurse Douglas prescribed Lortab, Flexeril, and ibuprofen for Greenway's back pain; the only change was an increase in Lortab dosage on February 9, 2011. R. 365-66, 367-69, 370, 373. Greenway reported having trouble with daily activities due to lower back pain on March 4, 2011, but the only treatment Nurse Douglas provided was the continuation of Greenway's medication regimen and a follow up appointment in two months. R. 370-71.

In addition to this conservative treatment for his back and leg pain, Green received only conservative mental health treatment. As the ALJ noted, Greenway has not received any treatment from a mental health professional. R. 25. Nurse Douglas prescribed Valium on February 9, 2011. R. 373. On March 4, 2011, Greenway reported significant improvement in his bipolar disorder since between switched to Valium. R. 370.

Finally, as to Greenway's chronic obstructive pulmonary disease, ALJ noted that Greenway continues to smoke, has not required frequent emergency room visits, and has been noted to have only a moderate obstructive lung defect on pulmonary functioning testing, with a good response to bronchodilation. R. 25.

Dr. Humphries noted during his consultative examination that Greenway had sought emergency treatment for his breathing and declined overnight admission and had not required hospitalization for his breathing. R. 247. The medical record further reveals that Greenway reported to the hospital only once complaining of shortness of breath, on March 22, 2008, and that was in conjunction with suicidal ideation. R. 283, 288. [2] Greenway was treated with nebulizers and subsequently weaned to room air with normal respiratory rate. Dr. Daniel

---

[2] Greenway reported to the ER that he had suicidal thoughts and that he had attempted suicide by cutting his wrists with a knife. He was observed to have multiple superficial lacerations on his left forearm. R. 283, 288, 306-15. Dr. Daniel Goodrich found that Greenway's self-cutting was an attempt to deal with emotional pain and that Greenway was not an immediate danger to himself or others. R. 316-17. The record reflects no further incidents of self-harm or suicidal ideation by Greenway.

9

Goodrich found that Greenway was probably developing chronic obstructive pulmonary disease ("COPD"), but that Greenway did not appear to need medication for this condition at the time. Preliminary x-rays showed no acute disease. Dr. Goodrich further noted that some of Greenway's breathing problems were likely secondary to alcohol intake and polysubstance abuse. R. 306-15. On July 20, 2009, Greenway underwent a pulmonary functioning test at Carilion Clinic in Crystal Spring. Dr. Robert Kelley found a moderate obstructive lung defect. Greenway had a good response to the bronchodilator. R. 256, 258. Greenway subsequently established care with Nurse Douglas, who treated him for COPD by prescribing medication; Nurse Douglas's notes also reflect that Greenway continued smoking. R. 346-47, 348-49, 351-52, 365-66, 367-68, 370-71, 373-73, 374-75.

Greenway does not dispute, or even discuss, this evidence cited by the ALJ. Instead, Greenway simply notes the existence of other evidence in the record which could support an alternative conclusion. Pl.'s Br. 11-12. Greenway repeatedly asserts that the record corroborates his subjective complaints and finally notes that his complaints are supported by substantial evidence. Pl.'s Br. 11-12 ("The medical records corroborate the plaintiff's testimony . . . .") ( "It is the plaintiff's contention that the medical evidence corroborates the plaintiff's statements regarding his limitations . . . .") ("The plaintiff's allegations regarding his limitations and inability to maintain substantial gainful employment are supported by the medical evidence of record.") ("The plaintiff's testimony is supported by substantial evidence . . . ."). Assuming this is so, it is no basis for remand. The issue on appeal is not whether it is plausible that a different fact finder could have drawn a different conclusion or even if the weight of the evidence supports a finding of disability. The standard is whether the ALJ's decision is supported by substantial evidence. So long as this standard—defined as more than a mere scintilla but perhaps somewhat

less than a preponderance—is met, I cannot recommend reversing the ALJ. Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations omitted). Furthermore, credibility determinations are emphatically the province of the ALJ, not the court, and courts normally should not interfere with these determinations. See, e.g., Chafin v. Shalala, No. 92-1847, 1993 WL 329980, at *2 (4th Cir. Aug. 31, 1993) (per curiam) (citing Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990) and Thomas v. Celebrezze, 331 F.2d 541, 543 (4th Cir. 1964)); Melvin v. Astrue, 6:06 CV 00032, 2007 WL 1960600, at *1 (W.D. Va. July 5, 2007) (citing Hatcher v. Sec'y of Health & Human Servs., 898 F.2d 21, 23 (4th Cir. 1989)). Here, the ALJ's credibility determination is supported by substantial evidence. It should not be disturbed. See Johnson v. Barnhart, 434 F.3d 650, 658-59 (4th Cir. 2005) (per curiam) (citing Craig, 76 F.3d at 589).

**Obesity**

Greenway argues that the ALJ failed to properly consider the impact of his obesity upon his residual functional capacity. The regulations require the ALJ to consider the combined effects of obesity with other impairments and to consider the effects of obesity at steps two through five of the sequential disability evaluation. Social Security Ruling ("SSR")[3]; see also Barr v. Astrue, 5:10CV00074, 2011 WL 3420844, at *5-*6 (W. D. Va. Aug. 4, 2011) report and recommendation adopted by 5:10CV00074, 2011 WL 3847154 (W.D. Va. August 30, 2011). There is no requirement in the regulations that the ALJ include a lengthy or precise analysis in the opinion. Richards v. Astrue, 6:11-CV-00017, 2012 WL 5465499, at *6 (W.D. Va. July 5, 2012) (internal citations omitted). Rather, courts have found that the ALJ may rely upon medical records which adequately show a claimant's obesity and adopt the conclusions of doctors who

---

[3] "Social Security Rulings are interpretations by the Social Security Administration of the Social Security Act. While they do not have the force of law, they are entitled to deference unless they are clearly erroneous or inconsistent with the law." Pass v. Chater, 65 F.3d 1200, 1204 n.3 (4th Cir. 1995) (citing Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989)).

11

are aware of the claimant's obesity. Id. (citing Rutherford v. Barnhart, 399 F.3d 546, 552-53 (3d Cir. 2005); see also Martin v. Barnhart, 5:10CV00102, 2012 WL 663168, at *5 (W.D. Va. Feb. 29, 2012) report and recommendation adopted sub nom. Martin v. Astrue, 5:10CV00102, 2012 WL 994903 (W.D. Va. Mar. 23, 2012) (rejecting the claim that the ALJ failed to properly consider obesity where the ALJ discussed the claimant's testimony and took note of the medical opinions of record regarding the claimant's weight).

In this case, the ALJ properly accounted for Greenway's obesity. The ALJ expressly noted Greenway's obesity and/or height and weight at steps two, three, and four of his sequential analysis. R. 20, 22, 23, 24, 26. The ALJ concluded that Greenway's obesity was a severe impairment. R. 20. He found that Greenway's obesity, in combination with his other impairments, limited his mobility, ability to lift and carry heavy objects, ability to perform postural activities continuously, and ability to work in certain environments. R.22; see also R. 26. The ALJ specifically noted that obesity may increase the severity of coexisting or related impairments and stated that he had therefore considered the cumulative effects of Greenway's obesity. R. 23. Critically, the ALJ relied upon the consultative examination of Dr. Humphries, R. 26, who found that Greenway was obese, but that, even considering his obesity and his other impairments, could nevertheless sit, stand, and walk for six hours in an eight hour workday, lift twenty-five pounds occasionally and ten pounds frequently, occasionally climb, knee, and crawl, stoop or crouch without limitation, and must avoid heights, hazards, and fumes. R. 249-50. The ALJ found at step five of his sequential analysis that Greenway cannot perform any past relevant work due to his impairments. R. 26. Ultimately, the ALJ limited Greenway to performing a reduced range of sedentary work, which accounts for any limitations caused by Greenway's obesity.

To challenge an ALJ's obesity analysis, the claimant must advance additional, obesity-related functional limitations not accounted for by the ALJ in his determination of the claimant's RFC. Matthews v. Astrue, 4:08CV00015, 2009 WL 497676, at *4 n.4 (W.D. Va. Feb. 27, 2009); see also Phelps v. Astrue, 7:09CV0210, 2010 WL 3632730, at *7 (W.D. Va. Sept. 9, 2010). That is, Greenway must provide medical evidence establishing functional limitations not addressed in the RFC. Richards, 2012 WL 5465499, at *13. Here, Greenway argues that the ALJ did not account for the fact that his obesity increases his back and knee pain and shortness of breath, resulting in his need to lie down during the day. Pl.'s Br. 18.

The ALJ accounted for the impact Greenway's obesity has on his back and knee pain. He acknowledged that Greenway's impairments limit his mobility and ability to perform postural activities continuously, R. 22, and correspondingly restricted Greenway to sedentary work that does not require more than frequent climbing of ramps and stairs, more than frequent balancing, or more than occasional climbing of ladder/ropes/scaffolds, stooping, kneeling, crouching, or crawling. R. 24. He further accounted for Greenway's shortness of breath by restricting him from any moderate exposure to respiratory irritants. R. 24. The medical records do not demonstrate that Greenway's obesity caused significant limitations in his work activities other than those identified by the ALJ and accounted for in the RFC. Thus, the ALJ properly accounted for the limitations arising from Greenway's obesity in his RFC analysis, and relied upon medical evidence taking Greenway's obesity into account in accordance with SSR 02-1p.

**New Evidence**

Greenway argues that, as an alternative to summary judgment, this case should be remanded pursuant to sentence six of 42 U.S.C. § 405(g) on the basis of both the new evidence he submitted to the Appeals Council and the new evidence he submitted to the Court. Greenway

13

submitted two exhibits to the Appeals Council: (1) medical records from New Horizons Healthcare, dated November 16, 2010 – March 4, 2011, and (2) medical records from Carilion Sleep Clinic, dated June 1, 2011. "A claimant seeking a remand on the basis of new evidence . . . must show that the evidence is new and material and must establish good cause for failing to present the evidence earlier." Wilkins v. Sec'y, Dep't of Health and Human Servs., 953 F.2d 93, 96 n.3 (4th Cir. 1991). Evidence is new if it is not duplicative or cumulative; it is material if there is a reasonable possibility it would have changed the outcome of the Commissioner's decision. Id. at 96. When the claimant has submitted additional evidence to the Appeals Council, and the Appeals Council considered that evidence, the court must review the record as a whole, including the new evidence, to determine whether substantial evidence supports the Commissioner's findings. Id. 95-96. Here, the Appeals Council considered the additional evidence Greenway submitted to it, but found that the information did not provide a basis for changing the ALJ's decision. R. 1-2. I have considered the record as a whole, including the evidence submitted to the Appeals Council, in my analysis of whether or not the ALJ's conclusions regarding Greenway's subjective pain complaints and credibility were supported by substantial evidence. I further concluded that the ALJ's ultimate decision regarding Greenway's RFC and disability status is supported by substantial evidence when considering the record as a whole, including the evidence submitted to the Appeals Council.

The new exhibits submitted the Appeals Council reveal that Greenway continued to receive conservative treatment from Nurse Douglas for his impairments, without any referral to specialists or physical therapy, and also show that Greenway continued to use tobacco. R. 370-75, 378-81, 384-86. The new evidence submitted to the Appeals Council reveals that Dr. Jose Goyos diagnosed Greenway with mild-moderate obstructive sleep apnea on December 10, 2010,

but there is no indication that this diagnosis relates back to the relevant time period and it was treated conservatively with BiPAP therapy. R. 384-86, 391-95. Finally, the opinion of Dr. Goyos that Greenway is "currently unable to carry out *physical work related labor* due to his underlying respiratory condition," R. 381 (emphasis added), is not inconsistent with the ALJ's RFC, which limited Greenway to sedentary work. This is particularly clear in light of the context of Dr. Goyos's statement—Greenway had just reported his employment history in construction/masonry. R. 379. There is no reasonable probability that Dr. Goyos's opinion would change the ALJ's decision, because the ALJ's decision already does what Dr. Goyos's opinion suggests, which is to restrict Greenway to work that does not involve the physical labor required by construction/masonry work.

Greenway has also submitted to two exhibits of new evidence to this court: (1) medical records from Dr. Jose Goyos, dated December 14, 2011 – September 4, 2012, and (2) an order form from Franklin Respiratory and Medical, Inc., dated January 12, 2012. As to the first exhibit, this evidence does not relate to the relevant period. Furthermore, it reflects that Greenway self-discontinued his BiPAP therapy because he found it too hard to get used to and that he continued smoking. It does not contain any new diagnostic tests. (Dkt. No. 18-2). The second exhibit, a single page consisting of a receipt for oxygen, dates to January 12, 2012, almost a year and a half after the hearing before the ALJ on June 17, 2010. (Dkt. No. 18-3). This evidence also does not relate to the relevant time period. For these reasons, I find that neither the new evidence submitted to the Appeals Council nor the new evidence submitted to the court provide any basis for remand.

## RECOMMENDED DISPOSITION

For the foregoing reasons, it is **RECOMMENDED** that an order be entered **AFFIRMING** the final decision of the Commissioner, **GRANTING** summary judgment to the defendant, **DENYING** plaintiff's motion for summary judgment, and **DISMISSING** this case from the court's docket.

The clerk is directed to transmit the record in this case to the Honorable Norman K. Moon, United States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation within fourteen (14) days. Any adjudication of fact or conclusion of law rendered herein by the undersigned that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings, as well as to the conclusion reached by the undersigned, may be construed by any reviewing court as a waiver of such objection.

Enter: August 7, 2013

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge